Richard M. Garbarini (RG 5496)
GARBARINI FITZGERALD P.C.
250 Park Ave, 7th Floor
New York, New York 10177
Phone: (212) 300-5358
Fax: (888) 265-7054

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------

SIMON J. BURCHETT PHOTOGRAPHY, INC.,

Plaintiff,

v.

LEONARDO DRS, INC., CALIFORNIA TECHNICAL MEDIA CORP., DAGRATA LLC, and TEX-AIR PARTS, INC.,

Defendants.

----------------------------------------

Case No.: 23-cv-11194

**ECF CASE**

**COMPLAINT AND JURY DEMAND FOR DAMAGES FOR COPYRIGHT INFRINGEMENT**

Plaintiff SIMON J. BURCHETT PHOTOGRAPHY, INC., by and through the undersigned counsel, brings this Complaint and Jury Demand against defendants LEONARDO DRS, INC., CALIFORNIA TECHNICAL MEDIA CORP., DAGRATA LLC, and TEX-AIR PARTS, INC. d/b/a TEX-AIR INTERNATIONAL, LTD. for damages based on copyright infringement pursuant to the Copyright Act and Copyright Revisions Act, 17 U.S.C. §§ 101, et seq. ("the Copyright Act" or "Act") and violations of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-05 (the "DMCA"). Plaintiff alleges below, upon personal knowledge as to itself, and upon information and belief as to other matters so indicated.

## GENERAL JURISDICTION

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) (jurisdiction over copyright actions).

1

**SPECIFIC JURISDICTION**

2. Plaintiff is the sole owner and creator of two iconic aerial image of the maiden voyage of the containership the Estelle Maersk (the "Copyrighted Images").

3. At bar, defendants are non-New York companies with headquarters located outside of New York.

4. Each of the defendants, without a license or authority, reproduced, distributed, and publicly displayed at least one of the Copyrighted Images.

5. Each of the defendants was put on notice, multiple times, of their infringing conduct, and each defendant elected to continue to infringe after each notice.

6. Each of the defendants derives significant revenue from interstate and international commerce.

7. Plaintiff suffered a particularized injury in this Judicial District as described below.

8. The entirety of one of the Copyrighted Images was used by each defendant to promote its services and overall institution.

9. Jurisdiction is conferred to this Court over each defendant pursuant to CPLR § 302(a)(3)(ii).

**VENUE**

10. At bar, a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1)-(3).

**DUE PROCESS**

11. There are no due process concerns in light of the fact that each defendant has committed numerous intentionally tortious acts knowing their acts would have consequences in

this Judicial District.

## PARTIES

12.     Plaintiff SIMON J. BURCHETT PHOTOGRAPHY, INC. is a New York corporation with a headquarters located in Manhattan, New York.

13.     Upon information and belief, defendant LEONARDO DRS, INC. ("LEONARDO") is a corporation formed under the laws of Delaware with a headquarters located at 2345 Crystal Drive, Suite 1000, Arlington, Virginia 22202.  Defendant LEONARDO may be served with process through its registered agent, CORPORATION SERVICE COMPANY located at 100 Shockoe Slip Fl 2, Richmond, VA, 23219.

14.     Upon information and belief, defendant CALIFORNIA TECHNICAL MEDIA CORP. ("CTM") is a corporation formed under the laws of the California with a headquarters located at 801 South Olive Street, PH 7, Los Angeles, CA 90014.  Defendant CTM  may be served with process through its registered agent ARI ZAHAVI located at 801 South Olive Street, PH 7, Los Angeles, CA 90014.

15.     Upon information and belief, defendant DAGRATA LLC ("DAGRATA") is a limited liability company formed under the laws of Illinois with a headquarters located at 7412 North Western Avenue Chicago, Illinois 60645.  Defendant may be served through its agent ADEFEMI ADEKOYA located at 2349 W Jarvis Ave Apt 1A, Chicago, IL 60645-1724.

16.     Upon information and belief, defendant TEX-AIR PARTS, INC. d/b/a TEX-AIR INTL., LTD. ("TEX-AIR") is a company with a headquarters located at 7736 Harwell Street, Fort Worth, Texas 76108.  Defendant TEX-AIR can be served through its agent Kay Broadie located at 4701 N. Main St., Fort Worth, TX 66106.

**FACTS**

17.   Plaintiff is the sole owner of all rights to the below copyrighted images of the containership Estelle Maersk titled "_L4A0298" (the "298 Image") and "_L4A0259" (the "259 Image") - U.S. Copyright Registrations No. VA 2-019-846 (collectively the "Copyrighted Images"). See **Exhibit 1**.

 

18.   Plaintiff is owned solely by Simon Burchett, a world-renowned professional photographer with forty years of experience in the field. Mr. Burchett has also been the recipient of some of the highest awards in the field of photography.

19.   Mr. Burchett is accredited as a master photographer by the Master Photographers' Association (the "MPA"). To become accredited, a photographer must: (i) have professional liability insurance, (ii) show a substantial history of professional work, (iii) provide a detailed client list, (iv) produce a curriculum vitea, and (iv) pass an interview.

20.   In July 2019, the 298 Image at issue here was submitted by Mr. Burchett to the Master Photographers' Competition. The Master Photographers' Competition is a national competition conducted by the MPA and is open to all professional photographers. There were over 1,000 Images submitted to the July 2019 Master Photographers' Competition.

21.   The 298 Image won the very prestigious Gold Medal. Previously, the 359 Image of the Estelle Maersk, which was taken by Mr. Burchett on the same day, won the Silver Medal at the

4

Master Photographers' Association competition in 2018.

22. On November 27, 2006, Mr. Burchett captured the Copyrighted Images during the maiden voyage of the containership the Estelle Maersk's as it left the port at Algeciras, Spain and passed through the Strait of Gibraltar.

23. The Estelle Maersk was the largest containership in the world when it made its maiden voyage.

24. Mr. Burchett travelled to Algeciras, Spain, obtained permission to fly a fixed-wing plane close enough to the vessel to take the Copyrighted Images, hired a pilot and aircraft, and submitted a flight log. As a licensed pilot, Mr. Burchett has expertise in flying, as well as the mechanics of taking aerial images.

25. Mr. Burchett took the Copyrighted Images during a four-hour flight in a fixed-wing aircraft; repeatedly circling the vessel to make sure every angle was captured.

26. It cost just under $20,000 in hard-costs to take the images of the Estelle Maersk

27. The Copyrighted Images at issue here have garnered the most acclaim, and generated the most revenue, of all images taken that day.

## A.P. MOLLER MAERSK

28. The Copyrighted Images, along with a ten other images, were sent, by request, to A.P. Moller Maersk for review.

29. A.P. Moller Maersk elected not to license the images, but, without license or authority, distributed and made the Copyrighted Images available on its website.

30. Each of the defendants reproduced, distributed, and publicly displayed at least one of the Copyrighted Images, without license or authority from plaintiff or A.P. Moller Maersk.

31. Each of the named defendants continued to publicly display one of the Copyrighted Images despite multiple demands to cease-and-desist.

32. Each of the defendants infringed plaintiff's rights pursuant to Section 106 of the Copyright Act.

### A. DEFENDANT LEONARDO'S ACTS OF INFRINGEMENT

33. Defendant LEONARDO is a military contractor, and the international subsidiary of the Italian company Leonardo S.p.A.

34. Defendant LEONARDO, formerly DRS Technologies, Inc. was purchased by Leonardo S.p.A. in order for the foreign entity to gain entrance into the lucrative U.S. Government military contracts business.

35. Defendant LEONARDO advertises itself as the "world-leader" in cyber-security.[1]

36. Defendant LEONARDO created a brochure for its "world-leading" cyber-security division, and elected to incorporate an unlicensed reproduction of the 298 Image in the advertisement (the "Infringing LEONARDO Advertisement").[2]



---

[1] See: <www.leonardodrs.com/what-we-do/domains/cyber-and-security/>.
[2] See: <cybersecurity.leonardo.com/documents/16277703/18536749/I-Port+LQ+(mm08714).pdf?t=1544446312993>.

37. The unlicensed reproduction of the 298 Image takes up 2/3 of a full page in the five-page Infringing LEONARDO Advertisement.

38. The very product depicted in the Infringing LEONARDO Advertisement was presented by defendant LEONARDO at the 2022 Navy League's SeaAirSpace Exposition.

39. Leonardo S.p.A. described how defendant LEONARDO acts as its agent for the sale of the products depicted in the Infringing LEONARDO Advertisement in the United States as follows:

> Among the top players in the world in Aerospace, Defence [sic] and Security, Leonardo showcases here its industrial capabilities, longstanding expertise and strong commitment to innovation and customers.
>
> Through a remarkable presence centered around its US company Leonardo DRS, leading provider of defense technologies across three segments in every military domain, Leonardo presents products and integrated solutions based on cutting-edge technologies.
>
> In full coherence with Leonardo values then, Leonardo DRS underlines its commitment to the US customers.[3]

40. Defendant LEONARDO, along with Leonardo S.p.A., would secure contracts with the U.S. and Italian Navies.

41. Defendant LEONARDO exploited the entire 298 Image, copying all of the constituent elements.

42. Defendant LEONARDO failed to include an attribution to plaintiff.

43. At no time did the defendant have the right to use the 298 Image in any manner.

44. At all times relevant to this Complaint, there were, and are, no facts that could possibly support a good-faith belief that defendant had a license or authority to exploit the 298 Image.

---

[3] See: <www.leonardo.com/en/news-and-stories-detail/-/detail/navy-league-seaairspace-exposition-2022>.

45.     On December 16, 2023, plaintiff, through counsel, served a demand to cease-and-desist on defendant LEONARDO. **Exhibit 2**.

46.     Defendant LEONARDO elected to ignore the demand to cease-and-desist, and continued to infringe plaintiff's exclusive rights to the 298 Image.

47.     On December 23, 2023, a second demand to cease-and-desist was served on defendant LEONARDO along with a draft of the within Complaint. **Exhibit 3**.

48.     Defendant LEONARDO again elected to ignore the demand to cease-and-desist, and continued to infringe plaintiff's exclusive rights to the 298 Image.

49.     As of the date of this Complaint, defendant LEONARDO has continued to publicly display the 298 Image without license or authority.

50.     Defendant LEONARDO infringed plaintiff's rights to the 298 Image pursuant to 106 U.S.C. § 106.  Plaintiff has incurred damages, and requests an award of plaintiff's actual damages, and defendant LEONARDO's profits in excess of plaintiff's actual damages, plus the reasonable attorneys' fees and costs incurred in this action.  Plaintiff may also elect to recover a statutory damage award. Defendant LEONARDO's acts entitle plaintiff to an enhanced statutory damage award of up to $150,000 pursuant to 17 U.S.C. § 504(c)(2).

**B.  DEFENDANT CTM'S ACTS OF INFRINGEMENT**

51.     Defendant CTM is an advertising company.  Specifically, defendant CTM creates animations for products in numerous industries.

52.     Defendant CTM describes the services it offers as follows:

> At our studio, we pride ourselves on using the latest and most innovative technologies to create high-quality 3D animated videos that meet the needs of our clients. To achieve this, we utilize a range of advanced tools and techniques that allow us to create stunning, visually engaging videos.

53. Defendant CTM, without license or authority, reproduced, distributed, and publicly displayed the 298 Image in violation of plaintiff's exclusive rights pursuant to Section 106 of the Copyright Act. See 17 U.S.C. § 106.

54. Below is a screenshot of the home page of defendant CTM's website located at <www.californiatechnicalmedia.com/> showing the unlicensed and infringing public display of the 298 Image by defendant CTM.



55. The above screenshot was captured on the date of this Complaint.

56. Defendant CTM chose to use an unlicensed reproduction of the 298 Image as the public "face" of defendant CTM's transportation industry services.

57. Defendant CTM describes the services it offers to the transportation industry as follow:

> 3D Animated Videos: An Essential Tool for the Transportation Industry
>
> In the fast-paced and competitive world of transportation, it's important to have the right tools to effectively showcase your products and services to potential customers. This is where 3D animated videos can be a game-changer. Using the latest technology and animation techniques, 3D animated videos can help transportation companies showcase and explain their products, technologies, and processes in a clear and engaging way.

9

58. Defendant CTM exploited the entire 298 Image, copying all of the constituent elements.

59. Defendant CTM failed to include an attribution to plaintiff.

60. At no time did defendant CTM have the right to use the 298 Image in any manner.

61. At all times relevant to this Complaint, there were, and are, no facts that could possibly support a good-faith belief that defendant CTM had a license or authority to exploit the 298 Image.

62. On October 28, 2023, plaintiff, through counsel, served a demand to cease-and-desist on defendant CTM. **Exhibit 4**.

63. Defendant CTM elected to ignore the demand to cease-and-desist, and continued to infringe plaintiff's exclusive rights to the 298 Image.

64. On November 25, 2023, a second demand to cease-and-desist was served on defendant CTM along with a draft of a complaint. **Exhibit 5**.

65. Defendant CTM again elected to ignore the demand to cease-and-desist, and continued to infringe plaintiff's exclusive rights to the 298 Image.

66. On December 23, 2023, a third demand to cease-and-desist was served on defendant CTM along with a draft of the within Complaint. **Exhibit 6**.

67. Defendant CTM again elected to ignore the demand to cease-and-desist, and continued to infringe plaintiff's exclusive rights to the 298 Image.

68. As of the date of this Complaint, defendant CTM has continued to publicly display the 298 Image without license or authority.

69. Defendant CTM infringed plaintiff's rights to the 298 Image pursuant to 106 U.S.C. § 106. Plaintiff has incurred damages, and requests an award of plaintiff's actual damages, and defendant's profits in excess of plaintiff's actual damages, plus the reasonable attorneys' fees and costs incurred in this action. Plaintiff may also elect to recover a statutory damage award. Defendant CTM's acts entitle plaintiff to an enhanced statutory damage award of up to $150,000 pursuant to 17 U.S.C. § 504(c)(2).

C. **DEFENDANT DAGRATA'S ACTS OF INFRINGEMENT**

70. Defendant DAGRATA, without license or authority, reproduced, distributed, created a derivative, and publicly displayed the 298 Image on the homepage of defendant DAGRATA's website located at <www.dagratallc.com>.

71. Below is a screenshot of the defendant's infringing use of the 298 Image on defendant DAGRATA's website.



72. At no time did defendant DAGRATA have a license to exploit the 298 Image in any manner.

73. At all times relevant to this Complaint, there were, and are, no facts that could possibly support a good-faith belief that defendant DAGRATA had a license or authority to exploit the 298 Image.

11

74. On December 6, 2023, defendant DAGRATA was served with a demand to cease-and-desist. See **Exhibit 7**.

75. Defendant DAGRATA elected to ignore the demand to cease-and-desist, and continued to infringe.

76. On December 19, 2023, a second demand to cease-and-desist was served on defendant DAGRATA, along with a draft copy of a complaint. See **Exhibit 8**.

77. On December 23, 2023, a third demand to cease-and-desist was served on defendant DAGRATA along with a draft of the within Complaint. **Exhibit 9**.

78. Defendant DAGRATA again elected to ignore the demand to cease-and-desist, and continued to infringe plaintiff's exclusive rights to the 298 Image.

79. As of the date of this Complaint, defendant DAGRATA has continued to publicly display the 298 Image without license or authority.

80. Defendant DAGRATA infringed plaintiff's rights to the 298 Image pursuant to 106 U.S.C. § 106. Plaintiff has incurred damages, and requests an award of plaintiff's actual damages, and defendant's profits in excess of plaintiff's actual damages, plus the reasonable attorneys' fees and costs incurred in this action. Plaintiff may also elect to recover a statutory damage award. Defendant DAGRATA's acts entitle plaintiff to an enhanced statutory damage award of up to $150,000 pursuant to 17 U.S.C. § 504(c)(2).

**D. DEFENDANT TEX-AIR'S ACTS OF INFRINGEMENT**

81. Defendant TEX-AIR, without license or authority, reproduced, distributed, created a derivative, and publicly displayed the 259 Image through its website located at <https://spacereps.com/supply.html> (the "SPACEREPS Website").

82. Below is a screenshot taken on the date of this Complaint of the defendant's infringing use of the 298 Image on defendant SPACEREPS Website.





83. The SPACEREPS Website is controlled by defendant TEX-AIR's employee Sergio Rosas and sells only defendant TEX-AIR's products. See below:[4]



---

[4] See: <https://spacereps.com/index.html>.

84. The screenshot on the prior page features a download of defendant TEX-AIR's catalogue.

85. Sergio Rosas, the purported creator of the SPACEREPS Website is an employee of defendant TEX-AIR.



86. At no time did defendant TEX-AIR have a license to exploit the 259 Image in any manner.

87. At all times relevant to this Complaint, there were, and are, no facts that could possibly support a good-faith belief that defendant TEX-AIR had a license or authority to exploit the 259 Image.

88. On October 20, 2023, defendant TEX-AIR was served with a demand to cease-and-desist. See **Exhibit 10**.

89. Defendant TEX-AIR elected to ignore the demand to cease-and-desist, and continued to infringe.

90. After an additional email follow-up, defendant TEX-AIR has continued to infringe the 259 Image.

91. On the date of this Complaint, the 259 Image is active and available on the SPACEREPS Website.

14

92. Defendant TEX-AIR infringed plaintiff's rights to the 298 Image pursuant to 106 U.S.C. § 106. Plaintiff has incurred damages, and requests an award of plaintiff's actual damages, and defendant's profits in excess of plaintiff's actual damages, plus the reasonable attorneys' fees and costs incurred in this action. Plaintiff may also elect to recover a statutory damage award. Defendant TEX-AIR's acts entitle plaintiff to an enhanced statutory damage award of up to $150,000 pursuant to 17 U.S.C. § 504(c)(2).

## DMCA VIOLATIONS

93. Plaintiff always distributes its images, including the Copyrighted Images, with embedded copyright management information ("CMI") in the metadata that includes plaintiff's name, website, and image name, along with technical specifications. Each of the defendants removed plaintiff's CMI.

94. Each of the defendants removed the CMI with the intent to cover their acts of infringement.

95. Defendant CTM falsely attributed the 298 Image.

96. Each of the defendants violated plaintiff's rights by removing the CMI pursuant to 17 U.S.C. § 1202.

97. Each of the defendants was served with multiple notices informing each defendant of its infringing conduct, and that plaintiff was the owner of the respective Copyrighted Images.

98. Each defendant continued to infringe after each notice and refused to correct the CMI. These are additional violations of Section 1202.

99. Plaintiff also disables the right-click copy function on its images, including the Copyrighted Images, prior to distribution.

100. Each defendant removed the copyright protection from the respective Copyrighted Images and enabled the right-click copy function.

101. Each defendant violated plaintiff's rights by removing the copyright protection system from the respective Copyrighted Images pursuant to 17 U.S.C. § 1201.

102. Each defendant has violated 17 U.S.C. §§ 1201-02 – the DMCA. Plaintiff is entitled to up to $25,000 for each violation of the DMCA pursuant to Section 1203 of the DMCA, as well as the reasonable attorneys' fees and costs incurred in this action.

### FIRST CLAIM FOR RELIEF
### COPYRIGHT INFRINGEMENT

103. Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth here at length here.

104. It cannot be disputed that the plaintiff has a valid, registered copyrights, and owns all rights to the Copyrighted Images.

105. Each defendant, without license or authority from plaintiff, reproduced, publicly displayed, and/or distributed one of plaintiff's Copyrighted Images.

106. Each defendant did so solely for the purpose of commercial gain.

107. Should plaintiff elect an award of statutory damages, only an award at the top of the statutory scale will serve as a deterrent to each defendant.

108. At all times relevant to this Complaint, each defendant's exploitation of one of the Copyrighted Images was not for criticism, comment, news reporting, teaching, scholarship, or research.

109. At all times relevant to this Complaint, each defendant's use was not transformative.

110. Each defendant elected to reproduce, distribute, and/or publicly display one of plaintiff's Copyrighted Images, using the entirety of each image, without a license.

111. As a direct and proximate result of each defendant's infringement of plaintiff's exclusive rights to one of the Copyrighted Images as set forth in Section 106 of the Act, plaintiff has incurred damages, and requests an award of plaintiff's actual damages, and each defendant's profits in excess of plaintiff's actual damages, plus the reasonable attorneys' fees and costs incurred in this action. Plaintiff may also elect to recover a statutory damage award. Each defendant's acts of infringement were intentional or with reckless disregard to plaintiff's rights, and plaintiff is entitled to an enhanced statutory damage award of up to $150,000 pursuant to 17 U.S.C. § 504(c)(2).

### SECOND CLAIM FOR RELIEF VIOLATION OF DMCA OF 1998, AS AMENDED
### 17 U.S.C. §§ 1201-05

112. Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth at length here.

113. Plaintiff always distributes its copyrighted images, including the Copyrighted Images here, with embedded CMI which includes the title of the image, name of the author and copyright owner.

114. Each defendant removed plaintiff's CMI, and copied, publicly displayed, and/or distributed one of the Copyrighted Images without the CMI.

115. Each defendant failed to correct the CMI after multiple notices.

116. Defendant CTM falsely attributed the 298 Image and refused to correct the false attribution after multiple notices.

117. Each defendant repeatedly violated Section 1202 of the DMCA.

118. Each defendant did the forgoing with the intent to conceal the infringement.

17

119. Each defendant disabled plaintiff's copyright protection system by enabling the right-click copy function on the unlicensed reproduction of one of the Copyrighted Images.

120. Each defendant violated Section 1201 of the DMCA.

121. Plaintiff seeks award of statutory damages for each violation of Sections 1201-02 of the DMCA in the sum of $25,000, plus the reasonable attorneys' fees and costs incurred in this action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against each defendant, and awarding plaintiff as follows:

1. restitution of each defendant's unlawful proceeds in excess of plaintiff's compensatory damages;
2. compensatory damages in an amount to be ascertained at trial;
3. a statutory damage award, including all penalties authorized by the Copyright Act (17 U.S.C. §§ 504(c)(1), 504(c)(2));
4. an award of up to $25,000 in statutory damages for each violation by defendant of the DMCA, 17 U.S.C. §§ 1201-02;
5. the reasonable attorneys' fees and costs incurred by plaintiff in this action (17 U.S.C. § 505);
6. pre- and post-judgment interest to the extent allowable; and,
7. such other and further relief that the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: December 27, 2023　　　　　　　　　　**GARBARINI FITZGERALD P.C.**
New York, New York

By: *Richard M. Garbarini*
　　　Richard M. Garbarini (RG 5496)